COLBERT *v.* PITNER, executrix.

ATKINSON, J. 1. The grounds of the caveat numbered three, four, and six as amended were stricken on demurrer, and no exception was taken to the judgment.

2. The grounds of the motion for new trial numbered four, eight, thirteen, fourteen, and sixteen are incomplete and not sufficiently definite to present any question for decision.

3. In the fifth, sixth, and twelfth grounds of the motion for a new trial error is assigned on rulings of the court refusing to allow questions propounded to a witness for the propounder on cross-examination, seeking to elicit the opinion of the witness as to the reasonableness of the testator's disposition of his property. The court properly refused to allow the questions, because the information sought to be elicited is not a proper subject for opinion evidence. *Owen* v. *Groves,* 145 *Ga.* 287 (3)

(88 S. E. 964). The decision in *Kaigler* v. *Brannon*, 137 *Ga*. 36 (72 S. E. 400), does not hold contrary to the foregoing.

4. In the seventh and eleventh grounds of the motion for a new trial complaint is made of the rejection from evidence of a certified copy, from the court of ordinary of Madison County, of the entire record in a proceeding instituted by the mother of the caveatrix, to remove the testator as guardian of the caveatrix, based on the ground of incompetency. *Held*, that this record related to matter included in the third ground of the caveat that was stricken on demurrer, to which no exception was taken; and it appears from the record that was tendered, that a compromise judgment was rendered that did not show an adjudication that the guardian was incompetent. If there was any error in rejection of the evidence, it was not cause for a reversal.

5. The ninth ground of the motion for a new trial complains of the refusal of the court to allow the mother of caveatrix as a witness for caveatrix, on direct examination, to answer the question: "What was the state of Mr. Colbert's feelings towards you after your proceeding to have him removed?" This ground fails to state what answer the witness would have made had she been permitted to testify; and consequently no question is presented for decision. If the anticipated answer had been stated and would have been relevant, it related to a matter that was included in the sixth ground of caveat that was stricken on demurrer, and no exception was taken.

6. The tenth ground of the motion for new trial complains of the rejection of questions and answers propounded on direct examination to the mother of caveatrix: Q. "You say that he was a strong hater and a strong lover?" A. "I think so." Q. "Did he ever get over a hate that he had." A. "I don't think he did. I am not sure, but I don't think he did." *Held*, that it was not error to reject this proffered evidence. If the answers were relevant, they related to the matter that was included in the sixth ground of the caveat that was stricken on demurrer.

7. The fifteenth ground of the motion for new trial complains of questions propounded on direct examination to a witness for the caveatrix: "Q. 'In 1914, what was your knowledge of Mr. Colbert; I will get you to state whether or not, in his condition that he was in then, if he was capable of bringing in mental review with approximate accuracy his family relations and of comprehending claims and relations naturally suggested by such review?' *Held*, that this ground is incomplete, because it fails to disclose what answer the witness would have given if he had been permitted to testify, and consequently does not present any question for decision.

8. The remaining grounds of the motion for a new trial relate to alleged newly discovered evidence. As to two of the persons who it was alleged would give testimony as to new facts, there were counter-affidavits attacking them as unworthy of belief. The remaining person would only give opinions as to mental incapacity of the testator, based on declarations showing his hatred of the mother of caveatrix several years after the will was executed.

9. The subscribing witnesses to the will all gave definite testimony to the effect that the testator was of sound mind at the time the will was exe-

cuted, and that it was freely and voluntarily executed by him as his will. The evidence offered by the caveatrix to show mental incapacity of the testator to make a will at the time the paper was executed and undue influence upon the testator, as alleged in the grounds of caveat, was insufficient for that purpose; and the evidence demanded the verdict establishing the will as directed by the court.

10. The judge did not abuse his discretion in refusing a new trial.

*Judgment affirmed. All the Justices concur.*

No. 3728. FEBRUARY 27, 1924.

Appeal from probate of will. Before Judge Hodges. Madison superior court. April 2, 1923.

James F. Colbert executed his will on March 23, 1914, and died on April 8, 1922. Mrs. India Colbert Pitner and Mrs. Ouida Colbert Collier, daughters of the testator, were nominated executrixes. At the time the will was executed E. A. Colbert, a son of the testator had died leaving a widow and one child, Margarette Colbert. The widow married again, and thereby became Mrs. S. R. Sims. Item two of the will provided: "My granddaughter Margarette Colbert, the only child of my beloved son Earl Arnold Colbert, deceased, having been amply provided for, having inherited an ample estate of my son Earl Arnold Colbert, which was given him during his lifetime, and in said division my beloved son Earl Arnold Colbert having received a greater amount in value than any of my other children, I hereby give to my granddaughter Margarette Colbert, out of my estate, the sum of five hundred & no/100 ($500.00) dollars, the same to be paid to her after my wife's death or marriage, provided my granddaughter is then 21 years of age. If my granddaughter Margarette Colbert is not 21 years of age at the death or marriage of my beloved wife, then this amount at that time is to be paid over to Walter Pitner, my son in law, to be by him held for my granddaughter Margarette Colbert, without interest, until my said granddaughter shall reach the age of 21 years. If my said granddaughter should die before she is 21 years of age, then this bequest to her is to revert to my estate, and become a part of the corpus of the same, and be divided as the remainder of my estate. If my granddaughter should die before my wife or before my wife should marry again, if she should marry again, then and in that event this bequest shall revert to my estate, and be divided between the other heirs of my estate as the other property of the same is divided. With the exception as is provided in this item of my will, I do not desire that my granddaughter Margarette Colbert shall

share in the distribution of my estate, and to have no further interest therein."

When the will was propounded for probate, Margarette Colbert, appearing by her mother, Mrs. Sims, as next friend, filed a caveat. A judgment was rendered by the court of ordinary setting up the will, and from that judgment an appeal was taken to the superior court. Grounds three, four, and six of the caveat were as follows: (3) "For that the said J. F. Colbert executed the said pretended will under a mistake of fact as to the conduct of this caveator. In 1912 the said J. F. Colbert was guardian for this caveator, who was then a child seven years old. The mother of caveator brought a proceeding before the ordinary of Madison County, to have said J. F. Colbert removed and herself appointed guardian, this proceeding being predicated upon the grounds of waste and incapacity to manage the property, and the purpose of the said J. F. Colbert to sell certain lands. This case resulted in a compromise under the terms of which the said J. F. Colbert resigned as guardian and soon afterwards executed this pretended will. While this caveator was a child and knew nothing of what was going on, the said J. F. Colbert, in executing the paper being offered, did so under the belief that the caveator was in some way responsible for said proceeding in said court of ordinary; and thus under the influence of a mistake of fact as the conduct of this caveator, who was an heir at law, and in consequence thereof, said pretended will is inoperative in so far as this caveator is concerned." (4) "For that the said J. F. Colbert executed said pretended will under a mistake of fact as to what this caveator had heretofore received. He recites in the second item of his will that ' My granddaughter Margarette Colbert, the only child of my beloved son Earl Arnold Colbert, deceased, having been amply provided for, having inherited an ample estate of my son Earl Arnold Colbert, which was given him during his lifetime and in said division my beloved son Earl Arnold Colbert having received a greater amount in value than any of my other children, I hereby give to my granddaughter Margarette Colbert out of my estate the sum of five hundred and no/100 ($500.00) dollars, the same to be paid to her after my wife's death or marriage, provided my granddaughter is then 21 years of age.' Whereas in fact the property given to the father of caveator was not property of J. F. Colbert at all, but it was the property passing under the will of S. W. Colbert,

in which J. F. Colbert at best had only a life-interest. At the time he gave to Earl Colbert the property mentioned he at the same time gave to his other two children an equal amount of property, all of said property being that passing under the will of S. W. Colbert, in which J. F. Colbert had no interest except a life-interest in the home place; and the said J. F. Colbert therefore had given nothing to caveator's father. In executing the paper being offered as a will the said J. F. Colbert had been misled and acted under a mistake, believing that he had in fact made provision for his son Earl Colbert, and through him caveator, his granddaughter. . . " (6) "Said paper being propounded was executed by the said J. F. Colbert because of his dislike to caveator's mother, Mrs. S. R. Sims, and because of that dislike and his malice towards her he executed the paper in question for the purpose of punishing caveator through her mother. Such a degree of malice amounts to insanity and destroys the capacity to make a will; and said paper having been executed under the influence of such prejudice and insanity, the same is void. And all this the caveator is ready to verify." This was amended by alleging: "Testator brooded over his hatred for her mother, and the wrong he imagined she had perpetrated on him in having him removed as guardian for caveator, until he became insane on the subject. And he was a monomaniac on said subject. That the pretended will was executed as, a result of said monomania, and is to that extent void."

A demurrer was filed, and the foregoing grounds of caveat were stricken on demurrer; to which ruling no exception was taken. The remaining grounds of the caveat were as follows: (1) "For that said J. F. Colbert, at the time of making said pretended will, was not of sound and disposing mind and memory." (2, as amended) "For that the said J. F. Colbert did not execute the said pretended will freely and voluntarily, but was moved thereto by undue influence and persuasions over him by the legatees mentioned in said paper, other than this caveator; and it is therefore not his will. . . Mrs. Ouida Collier, one of the executors of the will, lived in a few hundred yards of her father, and she saw him daily. She was desirous of getting the property of her father for herself and children, and to leave caveator out. She asked her father to make a will cutting caveator out; this request she frequently made. She represented to her father that he had already given caveator's father more than

he had the others, and he should leave caveator out.  This continued until testator accepted the statement as facts, and the will of said daughter was substituted, and the proposed paper or will is the offspring.  Testator, being old and feeble and desiring repose, was unable to resist the statements of his daughter, had he tried."  (5) "At the time the said J. F. Colbert executed the paper being propounded, he was then an old man more than seventy-five (75) years of age.  Old age and the weakness of intellect resulting therefrom had reached a point where testamentary capacity was gone, evidenced by the fact that the paper being propounded does not make a reasonable disposition of the estate of the said J. F. Colbert, he in fact giving all his property amounting to several hundred thousand dollars to his two children and their children, and giving this caveator nothing except $500.  The relationship existing, as well as the personal relationship, should have prompted the said J. F. Colbert to have treated his grandchildren all alike, had his testamentary capacity still existed."  On the trial, after both sides had concluded evidence, the judge directed a verdict setting up the will. The caveatrix made a motion for new trial, which was overruled, and she excepted.

*R. H. Gordon* and *John J. Strickland,* for plaintiff in error.

*Berry T. Moseley* and *J. D. Bradwell,* contra.